**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **MICHAEL GRASSO, individually and t/a General Partner of GF 2014, L.P.** <br> **Plaintiff,** <br><br> **v.** <br><br> **TOBY KATZ** <br><br> **Defendant.** | **CIVIL ACTION NO. 21-5472** |

<u>**MEMORANDUM OPINION**</u>

**Rufe, J.**                                                                               **September 28, 2022**

  Michael Grasso, individually and trading as General Partner of GF 2014, L.P., filed suit

against Toby Katz, alleging that Katz has been harassing Michael[1] and GF 2014 and interfering

with their business relationships, as well as Michael's relationships with his family, under the

guise of trying to execute a default judgment in a separate proceeding against Michael's son,

Joseph Grasso. Katz has moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for

lack of standing under Article III of the United States Constitution and under Federal Rule of

Civil Procedure 12(b)(6), or in the alternative, for summary judgment. For the reasons stated

herein, Katz's Motion to Dismiss will be granted.

**I.     BACKGROUND[2]**

  The parties in this case have a long and complex history. The Court will briefly

summarize the factual allegations that are relevant to this motion. GF 2014 was created in 2014,

---

[1] For clarity, Michael Grasso and his family members are referred to by their first names.

[2] The factual allegations in Michael's Amended Complaint [Doc. No. 6] are assumed true for purposes of evaluating the Motion to Dismiss.

with Michael as General Partner and he and his wife owning a 99% limited partnership interest as tenants by the entireties.[3] On November 15, 2016, Marshall Katz obtained a judgment against Michael's son, Joseph, in Illinois state court in the amount of $23 million (the "Illinois Judgment").[4] On January 2, 2017, Michael and his wife gifted their interest in GF 2014 to Joseph and his wife, Donna Grasso, as tenants by the entireties (the "Entireties Interest").[5] On February 1, 2017, Katz transferred the Illinois Judgment against Joseph to the Montgomery County, Pennsylvania, Court of Common Pleas (the "Execution Proceedings").[6] Neither Michael nor GF 2014 is a party to the Execution Proceedings.[7]

On November 2, 2020, as part of discovery in the Execution Proceedings, Katz issued a subpoena to Michael to attend and testify in his capacity as General Partner of GF 2014.[8] GF 2014 produced all tax returns it has filed since 2016, all documents relating to gifting the Entireties Interest to Joseph and Donna, documents relating to GF 2014's property at 649 Dodds Lane, Gladwyne, Pennsylvania (the "Dodds Lane Property"), and documents relating to an explosion that leveled the Dodds Lane Property in 2018, among other materials.[9]

---

[3] Am. Compl. [Doc. No. 6] ¶ 13.

[4] Am. Compl. [Doc. No. 6] ¶¶ 4,14. *See Marshall J. Katz v. Joseph Grasso et al.*, No. 07-CH-24116 (Cir. Ct. Cook Cnty., Ill., Ch. Div.).

[5] Am. Compl. [Doc. No. 6] ¶ 26.

[6] Am. Compl. [Doc. No. 6] ¶ 17. *See Katz v. Grasso*, No. 2017-02140 (Mont. C.C.P. filed Feb. 1, 2017).

[7] Am. Compl. [Doc. No. 6] ¶ 18.

[8] Am. Compl. [Doc. No. 6] ¶ 33; *see also* Ex. B.

[9] Am. Compl. [Doc. No. 6] ¶ 36.

On December 16, 2020, Katz filed suit against Michael, Joseph, and Donna, asserting claims of fraudulent transfer, civil conspiracy and unjust enrichment (the "Katz Litigation").[10] Katz continued to issue subpoenas in furtherance of discovery in the Execution Proceedings. Katz served a subpoena on BHH Affiliates, LLC t/a Fox & Roach (the "Fox & Roach Subpoena"), GF 2014's real estate agent for the Dodds Lane Property,[11] as well as Clarke & Cohen (the "Clarke & Cohen Subpoena"), GF 2014's insurance adjuster engaged in a claim related to the Dodds Lane Property.[12] In addition to Fox & Roach and Clarke & Cohen, Katz has served subpoenas on Michael's family members.[13]

Michael then filed this lawsuit against Katz, alleging that Katz improperly used the Execution Proceedings to: (1) harass Michael and his family; (2) interfere with Michael's business relationships; (3) damage Michael's relationships with his children and grandchildren; and (4) prematurely conduct discovery for the Katz Litigation in violation of the Federal Rules of Civil Procedure.[14] Michael asserts claims of abuse of process,[15] tortious interference with contract and prospective business relationships,[16] and declaratory judgment.[17] Katz has moved to dismiss, or in the alternative, for summary judgment.[18]

---

[10] Am. Compl. [Doc. No. 6] ¶ 40. *See Katz v. Grasso*, No. 20-06320 (E.D. Pa. filed Dec. 16. 2020).

[11] Am. Compl. [Doc. No. 6] ¶ 46.

[12] Am. Compl. [Doc. No. 6] ¶ 56; *see also* Ex. C.

[13] Am. Compl. [Doc. No. 6] ¶ 42.

[14] Am. Compl. [Doc. No. 6] ¶ 41.

[15] Am. Compl. [Doc. No. 6] ¶¶ 69-72.

[16] Am. Compl. [Doc. No. 6] ¶¶ 75-77.

[17] Am. Compl. [Doc. No. 6] ¶¶ 78-83.

[18] Def.'s Mot. Dismiss [Doc. No. 10].

## II.   LEGAL STANDARD

"Federal Rule of Civil Procedure 12(b)(1) permits a party to move for dismissal of any claim over which the district court lacks subject matter jurisdiction."[19] A motion to dismiss for lack of standing is "properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."[20] The first step in evaluating a motion under Rule 12(b)(1) is to "determine whether the movant presents a facial or factual attack."[21] A facial challenge "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court."[22] A factual challenge, by contrast, "contests the truth of the jurisdictional allegations."[23] "[T]he irreducible constitutional minimum of standing consists of three elements[:]" (1) the plaintiff must have suffered an injury in fact; (2) the injury must be fairly traceable to the challenged conduct of the defendant; and (3) the injury is likely to be redressed by a favorable judicial decision.[24] The party asserting standing has the burden of establishing these elements.[25]

For a claim to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), each claim of a complaint must contain sufficient factual matter to state a claim to

---

[19] Fed. R. Civ. P. 12(b)(1).

[20] *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)).

[21] *Id.* (citation omitted).

[22] *Long v. Se. Pennsylvania Transportation Auth.*, 903 F.3d 312, 320 (3d Cir. 2018) (internal quotation marks and citation omitted).

[23] *Id.*

[24] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (citations and quotation marks omitted).

[25] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

relief that is plausible on its face.[26] The question is not whether the plaintiff will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold."[27] The court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to the relief."[28] However, the court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'"[29] The court must only consider allegations in the complaint, matters of public record, and exhibits attached to the complaint.[30]

## III.    DISCUSSION

### A.   STANDING

Katz argues that Michael lacks Article III standing to bring claims that arise from subpoenas served on Michael's family members or entities that do business with GF 2014.[31] Specifically, Katz contends that Michael has "not suffered 'a personal and tangible harm' constituting an injury in fact under Article III," but "[r]ather, he merely seeks to avenge what he personally (and paternalistically) perceives as wrongs done to his children and adult grandchildren."[32] Katz asserts that Michael's claims as General Partner of GF 2014 fare no

---

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[27] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation omitted).

[28] *Philips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3rd Cir. 2008) (internal quotation marks omitted) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3rd Cir. 2002)).

[29] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3rd Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)).

[30] *See Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir.1990). Katz submitted multiple exhibits that are neither matters of public record nor exhibits attached to the Amended Complaint. The Court cannot consider these exhibits for the purposes of the motion to dismiss.

[31] Def.'s Mem. L. Mot. Dismiss [Doc. No. 10-1] at 6.

[32] Def.'s Mem. L. Mot. Dismiss [Doc. No. 10-1] at 18.

better. "Michael complains about subpoenas served on Fox & Roach and Clarke & Cohen, third parties that dealt directly with Joseph, but who also do business with GF 2014," and thus, Katz argues that tort claims stemming from these subpoenas must be brought by Fox & Roach or Clarke & Cohen.[33] Katz contends that GF 2014 does not have standing simply by virtue of doing business with these companies.[34] Michael argues in response that he has alleged both financial and non-financial injuries to establish Article III standing, including harm to professional reputations, harm to business reputations and transactions, and harm to personal relationships.[35]

Katz's arguments regarding Michael's personal stake and damages conflate the threshold standing inquiry and the underlying merits analysis of Michael's claims. Therefore, the Court will consider each of Michael's claims in turn.

### B.  ABUSE OF PROCESS

To claim abuse of process, a plaintiff must allege "that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff."[36] "The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it: 'An abuse is where the party employs it for some unlawful object, not the purpose which it intended by the law to effect…'."[37] There is no cause of action for abuse of process if the claimant, even

---

[33] Def.'s Mem. L. Mot. Dismiss [Doc. No. 10-1] at 19.

[34] Def.'s Mem. L. Mot. Dismiss [Doc. No. 10-1] at 19.

[35] Pl.'s Mem. L. Opp.'n Mot. Dismiss [Doc. No. 11] at 11-12.

[36] *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008).

[37] *McGee v. Feege*, 517 Pa. 247, 535 A.2d 1020, 1023 (Pa. 1987) (citations omitted).

with bad intentions, merely carries out the process to its authorized conclusion.[38] As the Third Circuit has held, "the point of liability is reached when the utilization of the procedure for the purpose for which it was designed becomes so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure."[39]

Michael contends that the subpoenas issued to business contacts and to Michael's family members constitute legal process against Michael and that Katz used legal process in the Execution Proceedings for improper purposes—namely, to pressure Michael or GF 2014 to pay Joseph's judgment and to prematurely collect discovery for the Katz Litigation.[40] Katz maintains that under Pennsylvania law, abuse of process claims can only proceed where the abuse of process was against *the plaintiff*—here, Katz argues, Michael's claim is based on Katz's subpoenas *to third parties*.[41]

In response, Michael cites two cases to support his argument that process may be considered against a plaintiff if they are the "legal object" of the process.[42] Both are distinguishable. In *Allied Medical Associates v. State Farm Mutual Auto Insurance Company*, several of Allied's patients were plaintiffs in civil litigation arising from motor vehicle

---

[38] *Shaffer v. Stewart*, 473 A.2d 1017, 1018 (Pa. Super. Ct. 1984) (citation omitted).

[39] *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 308 (3d Cir. 2003) (internal quotation marks and citation omitted).

[40] Am. Compl. [Doc. No. 6] ¶¶ 63-66, 71-72; Pl.'s Mem. L. Opp.'n Mot. Dismiss [Doc. No. 11] at 1, 16-17. Specifically, Michael alleges that Katz attempts to "end-run around the Federal Rules of Civil Procedure" by conducting discovery in the Execution Proceedings meant for the Katz Litigation. Am. Compl. [Doc. No. 6] ¶¶ 63-64. Michael argues that discovery is not permitted in the Katz Litigation because a Rule 26(f) or Rule 16 conference has not yet taken place. *Id.*; Pl.'s Mem. L. Opp.'n Mot. Dismiss [Doc No. 11] at 16.

[41] Def.'s Mem. L. Mot. Dismiss [Doc. No. 10-1] at 20.

[42] Pl.'s Mem. L. Opp.'n Mot. Dismiss [Doc. No. 11] at 17-18.

accidents.[43] State Farm, the insurer of the defendants in those actions, appointed counsel for its insured.[44] Allied argued that State Farm, through appointed counsel, issued subpoenas and took depositions in these cases "to investigate and harass Allied and to drive it out of business."[45] Although Allied was not a party to the underlying civil litigation, the court found legal process where State Farm used discovery procedures to seek information *from Allied*.[46] Here, however, Michael alleges that the injuries arise from subpoenas sent to individuals and entities other than Michael or GF 2014—specifically, subpoenas sent to Michael's family members and Fox & Roach and Clarke & Cohen.

Michael's reliance on *Cruz v. Princeton Insurance Company* is similarly misplaced.[47] In *Cruz*, the Superior Court of Pennsylvania allowed parents of a minor to pursue an abuse of process claim, disagreeing with the trial court's reasoning that the parents could not pursue a claim because the petition for appointment of guardian *ad litem* was not directed at the parents individually.[48] The Superior Court reasoned that the "undeniable aim" of the underlying petition "was the removal of [the parents] as guardians."[49] Moreover, the petition was captioned against the parents "as parents and natural guardians of [the child]" and against the parents *in their own*

---

[43] No. 08-2434, 2008 WL 4771850, at *7 (E.D. Pa. Oct. 30, 2008).

[44] *Id.*

[45] *Id.*

[46] *Id.* at *8.

[47] 925 A.2d 853 (Pa. Super. Ct. 2007), *rev'd*, 950 A.2d 269 (Pa. 2008).

[48] *Id.* at 857.

[49] *Id.*

*right*.[50] By contrast, it cannot be said that Michael and GF 2014 were undeniably the "legal object" of Katz's subpoenas in furtherance of discovery in the Execution Proceedings.

Thus, Michael has not established standing with respect to the abuse of process claim, and accordingly, Count I will be dismissed.

## C. TORTIOUS INTERFERENCE

Under Pennsylvania law, a claim for tortious interference with existing contract or prospective contractual relations requires: (1) the existence of a contractual or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) the occasioning of actual legal damage as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.[51]

Michael alleges that Katz intentionally interfered with current and future contractual relationships with two firms: Fox & Roach, the real estate agency engaged with the sale of the Dodds Lane Property, and Clarke & Cohen, GF 2014's insurance adjuster engaged for claims related to the explosion at that property.[52] Katz argues that Michael has not alleged that Fox &

---

[50] *Id.*

[51] *Acumed LLC v. Advanced Surgical Serv.*, 561 F.3d 199, 212 (3d Cir. 2009) (citation omitted).

[52] Am. Compl. [Doc. No. 6] ¶¶ 73-77. While the Motion to Dismiss briefing focuses on Michael and GF 2014's business relationships with Fox & Roach, Michael also alleges that Katz has interfered with Michael and GF 2014's business relationships with Clarke & Cohen. *See* Am. Compl. [Doc. No. 6] ¶ 76 ("Katz has also interfered with Michael's and GF 2014's relationships with firms with which it does business and with which it reasonably expected to continue to do business, such as, for example, its realtors and *insurance adjusters*.") (emphasis added); *see also id.* at ¶ 55 ("Katz has similarly interfered with Michael and GF 2014's relationship with their insurance

Roach declined to assist with the sale of the Dodds Lane Property because of the subpoenas, has failed to identify the specific contract Katz has interfered with, and has not alleged how the subpoenas could have caused any actual monetary damages, reputational damage, and emotional damage.[53]

Michael is first required to identify a contractual relationship. Here, Michael has alleged a contractual relationship with Fox & Roach in the form of GF 2014's listing agreement with Fox & Roach for the sale of the Dodds Lane Property.[54] However, even considering the allegations of Michael and GF 2014's long history with two realtors at the firm,[55] and GF 2014's role as a real estate holding company,[56] Michael has not identified prospective business contracts with which Katz has tortiously interfered, beyond the mere hypothetical expectation to conduct business with Fox & Roach in the future. Thus, the Court will limit its discussion as to whether Michael has alleged interference with an existing relationship as to the Dodds Lane Property contract.

The Amended Complaint fails to allege purposeful action on the part of Katz intending to harm the business relationship. Michael asserts, without supporting allegations, that Katz's goal is to interfere with the Dodds Lane Property transaction so that she can use the threat of a failing

---

adjusters."). Thus, the Court will consider Michael and GF 2014's alleged relationships with both Fox & Roach and Clarke & Cohen.

[53] Def.'s Mem. L. Mot. Dismiss [Doc. No. 10-1] at 29. Katz avers that Michael cannot personally assert a tortious interference claim because Joseph executed the contract with Fox & Roach, attaching the exclusive listing contract as Exhibit 7. However, for the purposes of evaluating the Motion to Dismiss, this Court cannot consider non-public exhibits outside of the Amended Complaint.

[54] Am. Compl. [Doc. No. 6] ¶ 49.

[55] Am. Compl. [Doc. No. 6] ¶ 49.

[56] Am. Compl. [Doc. No. 6] ¶ 53.

10

transaction to extract settlement payments.[57] Michael asks this Court to infer that Katz, by issuing subpoenas to a third party as part of the discovery process in the Execution Proceedings, is in fact trying to bully Michael and GF 2014 to pay the Illinois Judgment. If, as Michael describes it, Katz views Michael or GF 2014 as a "potential source of payment" for the Illinois Judgment,[58] there is also a reasonable inference that Katz does not have any incentive to "maliciously" interfere with Michael's current and future business dealings.

Second, the Amended Complaint must demonstrate that Katz's actions were not privileged or justified. In determining whether an action is "proper" under Pennsylvania law, courts review the following factors under Restatement (Second) of Torts Section 767: (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the social interest in protecting the freedom of the action of the actor and the contractual interests of the other; and (6) the relations between the parties.[59] Here, Katz issued subpoenas under Pennsylvania Rule of Civil Procedure 3117 in the execution of the Illinois Judgment against Joseph. Indeed, Michael does not argue that the subpoenas were not valid—instead, he argues that the subpoenas are a tactic to coerce Michael and/or GF 2014 to pay Joseph's judgment. It is an important function of the litigation process that a party must be able to issue subpoenas in the pursuit of discovery. Thus, Katz's issuance of subpoenas was justified as a matter of law.

---

[57] Am. Compl. [Doc. No. 6] ¶ 52.

[58] Pl.'s Mem. L. Opp.'n Mot. Dismiss [Doc. No. 11] at 7.

[59] *Windsor Securities, Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 663 (3rd Cir. 1993) (citation omitted).

Finally, Michael fails to allege any damages to Michael and GF 2014's relationship with Fox & Roach. Michael alleges that "the firm now refuses to engage in basic communication directly with Michael and GF 2014, and the prospects of doing future business dealings has been diminished" and that "GF 2014's realtor has been so intimidated by Katz that, out of fear of being dragged more deeply into Katz's sham asset discovery, it determined that the consequences of withholding material information from its own client impacting a still pending $2 million real estate transaction were *less* severe than doing anything that Katz could try to pervert as part of some imagined, nonsensical conspiracy[.]"[60] However, Michael does not allege any facts in support of these allegations. Viewing the Amended Complaint in the light most favorable to the plaintiff, Michael does not raise an inference that Fox & Roach's alleged refusal to communicate with them is a result of Katz's subpoena, nor does he support his assertion that Fox & Roach is actually "intimidated" by Katz. Further, Michael concedes that the sale of the Dodds Lane Property was "still pending"[61] when he filed suit, meaning that the contractual relationship with Fox & Roach had not been terminated.

Michael relies heavily on the decision from the United States District Court for the Middle District of Pennsylvania in *Tungsten Heavy Powder and Parts, Inc. v. Global Tungsten & Powders Corp.*[62] However, *Tungsten* is distinguishable. The plaintiff in *Tungsten* alleged that current and prospective customers actually inquired about the defendant's claims and misrepresentations and expressed concerns about entering into contracts and continuing business

---

[60] Am. Compl. [Doc. No. 6] ¶¶ 50-51.

[61] Am. Compl. [Doc. No. 6] ¶ 51.

[62] No. 17-1948, 2018 WL 3304550, at *3 (M.D. Pa. July 5, 2018).

relationships with the plaintiff.[63] Further, the plaintiff in *Tungsten* alleged that it lost prospective and current customers including the loss of contracts worth 20 and 6 million dollars per year, respectively, as a result of the defendant's purposeful actions and interference with prospective contractual relations.[64] Thus, the *Tungsten* court determined that the damages allegations went "beyond mere reputational harm."[65] Here, by contrast, Michael and GF 2014 have not alleged that Fox & Roach expressed concrete concerns about their reputation, thus costing them business.

Michael's allegations regarding the Clarke & Cohen subpoena also fail. Michael asserts that Katz has "no legitimate reason" to seek discovery from Clarke & Cohen, and that Katz's sole purpose is to damage the firm's relationship with Michael.[66] However, Michael does not identify an existing contract with Clarke & Cohen, nor does he identify potential future contracts with Clarke & Cohen that have been soured by the Clarke & Cohen Subpoena.[67] Moreover, Michael does not plead any allegations supporting the notion that Michael and GF 2014's relationship with Clarke & Cohen is damaged, beyond merely asserting that the subpoenas have "directly damage[d] Michael's and GF 2014's relationship with Fox & Roach and Clarke and Cohen" and that Katz "intends for those firms to damage Michael's and/or GF 2014's reputation more generally in the business community by sharing with others the severe consequences that

---

[63] *Id.* at *2.

[64] *Id.* at *3.

[65] *Id.*

[66] Am. Compl. [Doc. No. 6] ¶¶ 58-59.

[67] The Amended Complaint describes Clarke & Cohen as "GF 2014's Insurance adjuster engaged for a claim related to an explosion at the Dodds Lane Property." Am. Compl. [Doc. No. 6] ¶ 56. It is not clear from the Amended Complaint whether this is an existing contract with which Katz has tortiously interfered.

they have endured as apparent punishment for doing business with them."[68] These conclusory allegations are insufficient. Therefore, Count II must be dismissed.

### D. DECLARATORY JUDGMENT

A declaratory judgment may be issued only where the constitutional standing requirements of a justiciable controversy are satisfied.[69] "[B]ecause the Constitution prohibits federal courts from deciding issues in which there is no 'case[ ]' or 'controversy,' declaratory judgments can be issued only where there is an 'actual controversy[.]' The discretionary power to determine the rights of parties before injury has actually happened cannot be exercised unless there is a legitimate dispute between the parties."[70] The Third Circuit applies a three-part test that considers the adversity of interest of the parties, the conclusiveness of any judgment, and the practicality or help of that judgment.[71]

Michael seeks a judgment declaring that the Entireties Interest is not subject to the Illinois Judgment against Joseph Grasso only.[72] Michael asserts that because Joseph *and* Donna both own the Entireties Interest, it is not subject to execution by Katz—the Illinois Judgment is solely against Joseph.[73] Michael further argues that if the Entireties Interest is not subject to the Illinois Judgment against Joseph, "then there is no legitimate reason to continue to harass Michael, GF 2014, any person or company that does business with either and/or every member

---

[68] Am. Compl. [Doc. No. 6] ¶ 60.

[69] *St. Thomas–St. John Hotel & Tourism Assoc., Inc. v. Gov't of United States Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000).

[70] *Step–Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990).

[71] *Id.* (citations omitted).

[72] Am. Compl. [Doc. No. 6] ¶ 78.

[73] Am. Compl. [Doc. No. 6] ¶¶ 21, 81-82.

of Michael's family."[74] Katz argues that Michael lacks standing, and that the claim is unripe and improperly seeks an advisory opinion.[75] The Court agrees that Michael lacks standing to bring this claim. While the Entireties Interest includes a limited partnership interest in GF 2014, that interest is owned by Joseph and Donna, as tenants by the entireties.[76] Thus, Michael's request for declaratory judgment implicates the interests of Joseph and Donna, who are not parties to this action. Further, Michael concedes that neither Michael nor GF 2014 is a party to the Execution Proceedings,[77] and as Katz points out, the Amended Complaint does not allege that Katz has attempted to execute the Entireties Interest.[78] Therefore, there is no "substantial controversy" before this Court that would permit the Court to issue a declaratory judgment. Indeed, it would be improper for the Court to do so.

## IV. CONCLUSION

For the reasons stated above, Katz's Motion to Dismiss will be granted and the Amended Complaint dismissed with prejudice.[79] An order will be entered.

---

[74] Am. Compl. [Doc. No. 6] ¶ 83.

[75] Def.'s Mem. L. Mot. Dismiss [Doc. No. 10-1] at 31-32.

[76] Am. Compl. [Doc. No. 6] ¶ 20.

[77] Am. Compl. [Doc. No. 6] ¶ 18.

[78] Def.'s Mem. L. Mot. Dismiss [Doc. No. 10-1] at 32.

[79] Michael is not given leave to amend the complaint because doing so would be futile. In considering whether to grant leave to amend, the Court may deny leave where amendment would be futile. *See Neff v. Unum Provident Corp.*, No. 14-6696, 2015 WL 5036390, at *7 (E.D. Pa. Aug. 19, 2015).